J-S01014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TODD MICHAEL KELLER, | : | |
| | : | |
| Appellant | : | No. 869 MDA 2017 |

Appeal from the Judgment of Sentence April 27, 2017
in the Court of Common Pleas of Cumberland County,
Criminal Division at No(s): CP-21-CR-0002440-2015,
CP-21-CR-0002444-2015, CP-21-CR-0002648-2015

BEFORE: GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:         **FILED MARCH 21, 2018**

Todd Michael Keller ("Keller") appeals from the judgment of sentence imposed after a jury convicted him of two counts each of aggravated indecent assault, indecent assault, and harassment; and one count each of sexual assault, unlawful contact with a minor, corruption of minors, burglary, criminal mischief, fleeing or attempting to elude a police officer, criminal trespass, intimidation of witnesses or victims, prohibited offensive weapons, terroristic threats, driving under the influence ("DUI") – general impairment, and DUI – highest rate of alcohol.[1] We affirm Keller's judgment of sentence. However, we vacate the trial court's Order designating Keller as a sexually

---

[1] **See** 18 Pa.C.S.A. §§ 3125(a)(1), 3125(a)(8), 3126(a)(1), 3126(a)(8), 2709(a)(6), 2709(a)(7), 3124.1, 6318(a)(1), 6301(a)(1)(ii), 3502(a)(2), 3304(a)(5), 3733(a), 3503(a)(1)(i), 4952(a)(1), 908(a), 2706(a)(1); 75 P.S. §§ 3802(a)(1), 3802(b).

violent predator ("SVP") under Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10 *et seq.*, and remand for further proceedings.

The trial court thoroughly set forth the relevant factual history in its Opinion, which we adopt for purposes of this appeal. *See* Trial Court Opinion, 6/14/17, at 2-8. Briefly, Keller's convictions arose from his repeated sexual abuse of his minor stepdaughter, and his subsequent destruction of the home in which she was residing with a machete in retaliation for her reporting the abuse to authorities.

Following the imposition of his sentence, Keller filed a Motion for modification, challenging the discretionary aspects of his sentence. The trial court denied this Motion. Keller then filed a timely Notice of Appeal. In response, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Keller timely filed a Concise Statement, after which the trial court issued an Opinion.

Keller now presents the following issues for our review:

I. Whether the trial court erred in denying [Keller's] Motion to suppress [his] statements made to police during the post-polygraph interview and all evidence which flowed from the same?

II. Whether the trial court erred in denying [Keller's] Motion to sever?

III. Whether the evidence was insufficient to sustain the verdicts of guilt?

IV. Whether the trial court erred and abused its discretion in imposing consecutive sentences[,] and sentences at the

- 2 -

very top of the standard range[,] resulting in an excessive and unreasonable aggregate sentence[,] without taking into consideration substantial mitigating circumstances?

V. Whether the trial court erred in failing to merge certain convictions for sentencing purposes: indecent assault, [18 Pa.C.S.A.] § 3126(a)(1)[,] with aggravated indecent assault, [18 Pa.C.S.A.] § 3125(a)(1); indecent assault, [18 Pa.C.S.A.] § 3126(a)(8)[,] with aggravated indecent assault, [18 Pa.C.S.A.] § 3125(a)(8); corruption of minors with aggravated indecent assault; and sexual assault with aggravated indecent assault?

VI. Whether the trial court erred and abused its discretion when it classified [Keller] as a [SVP]?

Brief for Appellant at 11-12 (capitalization omitted, issues renumbered).

We will address Keller's first two issues together. Keller argues that the trial court erred and abused its discretion in denying his (1) Motion to suppress his inculpatory statements to the police; and (2) Motion to sever his three separate cases.[2] *See id.* at 20-34.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings

---

[2] Keller filed both of these Motions on the first day his jury trial was scheduled to begin. We note that Pennsylvania Rule of Criminal Procedure 579 provides, in relevant part, that generally, "the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist …." Pa.R.Crim.P. 579(A).

includes only the suppression hearing record and excludes evidence elicited at trial.

**Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

Concerning Keller's execution of a written waiver of his **Miranda**[3] rights during his police interview, we are mindful of the following:

> A defendant may waive his **Miranda** rights, and agree to answer questions or make a statement. For a waiver to be valid, it must be knowing, voluntary, and intelligent. In other words, the waiver must be the product of a free and deliberate choice rather than intimidation, coercion, or deception, and must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. …
>
> The test for determining the voluntariness of a confession and the validity of a waiver looks to the totality of the circumstances surrounding the giving of the confession. Some of the factors to be considered include: the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other factors which may serve to drain one's powers of resistance to suggestion and coercion.

**Commonwealth v. DeJesus**, 787 A.2d 394, 402-03 (Pa. 2001) (citations and quotation marks omitted).

Concerning challenges to a trial court's denial of a motion to sever, this Court has stated as follows:

---

[3] **See Miranda v. Arizona**, 384 U.S. 436, 444 (1966) (holding that the prosecution may not use a defendant's statements stemming from a custodial interrogation unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel).

A motion for severance is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

*Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa. Super. 2010) (citation, ellipses and brackets omitted).

Two Pennsylvania Rules of Criminal Procedure govern severance. Rule 582 provides, in relevant part, as follows:

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). Relatedly, Rule 583 provides as follows: "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583; *see also Dozzo*, 991 A.2d at 902 (stating that "[u]nder Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime.").

Concerning the trial court's denial of his Motion to suppress, Keller asserts as follows:

> Viewing the totality of the circumstances, [Keller's] waiver [of his *Miranda* rights,] made after the lengthy initial [police] interview at the time of the pre-polygraph interview by a [] Trooper[,] was not knowing, voluntary, and intelligent. All three Troopers [who interacted with Keller] used coercive tactics, being aware of and taking advantage of [Keller's] emotional weakness, strong desire to do anything to have his three young children returned to him, and his poor state of mind, being under the influence of alcohol and mental health medications, his extreme lack of sleep, and recent hospitalization for attempted suicide. [Keller] was also fatigued, medicated, influenced by his excessive drinking the night prior, and under the stress of not having any contact with his three young children[, such] that his confession was not voluntary and his waiver of *Miranda* rights was not knowing or intelligent. … [Keller's] statements [that] followed his unknowing, unintelligent, and involuntary waiver should be suppressed. Because the initial *Miranda* waiver was not valid, the statements made during the post-polygraph interview[,] and any evidence which flowed from the same[,] should have been suppressed.

Brief for Appellant at 24-25 (paragraph break omitted). Keller argues in the alternative that "[r]eviewing the totality of the circumstances, even [] if the *Miranda* waiver was valid, such waiver did not encompass the post-polygraph [police] interview." *Id.* at 27.

Concerning the trial court's denial of his Motion to sever, Keller contests the trial court's finding that the separate criminal acts charged in the respective criminal Informations were separated by only a few days. *See id.* at 31 (stating that Keller "was accused of sexually assaulting [the victim] from August 1, 2014[,] to May 9, 2015[,] in Cumberland County, and then was accused months later in another county" of the crimes related to

Keller's destruction of the victim's home and DUI). Additionally, Keller complains that "[t]he trial court never analyzed whether [he] would be prejudiced by his sexual assault, burglary and DUI, and harassment cases all being tried jointly before the same jury." *Id.* at 32; *see also id.* at 33 (asserting that "[t]he jury was incapable of separating evidence of the various individual offenses.").

In its Opinion, the trial court addressed Keller's challenges to the denial of his Motions to suppress and sever, and explained its reasons for determining that neither challenge entitled Keller to relief. *See* Trial Court Opinion, 6/14/17, at 8-12. We agree with the trial court's analysis and determination, and discern no abuse of its discretion. Accordingly, we affirm on this basis in rejecting Keller's first two issues. *See id.*

In his third issue, Keller contends that the Commonwealth failed to present sufficient evidence for the jury to properly find that he had committed all of the charged crimes[4] beyond a reasonable doubt. *See* Brief

_____

[4] In lieu of stating herein the statutory definitions of the myriad offenses of which Keller was convicted, we point to the statutes in question. *See* 18 Pa.C.S.A. §§ 3125(a)(1), 3125(a)(8), 3126(a)(1), 3126(a)(8), 2709(a)(6), 2709(a)(7), 3124.1, 6318(a)(1), 6301(a)(1)(ii), 3502(a)(2), 3304(a)(5), 3733(a), 3503(a)(1)(i), 4952(a)(1), 908(a), 2706(a)(1); 75 P.S. §§ 3802(a)(1), 3802(b).

for Appellant at 34-51.[5]   Concerning his convictions related to his sexual assaults of the victim (hereinafter "the sexual assault offenses"), Keller argues that "the Commonwealth failed to establish beyond a reasonable doubt that any of the crimes charged occurred between August 1, 2014[,] and May 19, 2015, the dates alleged in the information."  *Id.* at 38; *see also id.* at 37-38 (wherein Keller urges that the victim's testimony as to the precise period of time during which Keller was assaulting her was "vague and uncertain").  Keller further argues that the victim's testimony as to the number and nature of the sexual acts that had occurred was "disturbingly vague." *Id.* 38-39.  Additionally, Keller contends that the Commonwealth presented very little testimony as to whether the sexual contact was consensual. *Id.* at 46.  Finally, concerning his convictions arising out of his destruction of the victim's residence with a machete, and subsequent fleeing the scene in his car, Keller asserts that

> (1) he did not flee police apprehension in his car where he "traveled approximately one mile at a normal rate of speed, this was not a high speed chase, … and [Keller] complied with the officer's request to turn off the car[,]" *id.* at 47;

_____

[5] In his Argument section concerning this issue, Keller does not challenge the sufficiency of the evidence supporting his convictions of harassment, burglary, criminal trespass, intimidation of witnesses or victims, terroristic threats, or DUI. *See* Brief for Appellant at 46.  Accordingly, he has waived any challenge to those convictions. *See, e.g., Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015) (stating that, where the appellant "fails to expand upon [a] claim in the argument section of his brief … the claim is waived.").

(2) "[t]he Commonwealth failed to establish that the damage to the [victim's grandparent's] home exceeded $5[,]000.00, as required for a conviction of criminal mischief graded as a felony of the third degree[,]" *id.* at 49;

(3) the machete that Keller used to destroy the home, which he lawfully purchased, does not fall under the statutory definition of a prohibited "offensive weapon[,]" *id.* at 49-50.

The trial court concisely addressed Keller's sufficiency challenge in its Opinion, set forth our standard of review, and determined that there was ample evidence for the jury to convict Keller of the sexual assault offenses. *See* Trial Court Opinion, 6/14/17, at 12-13. We agree with the trial court's analysis and determination, which is supported by the record and the law, and therefore affirm on this basis in rejecting Keller's sufficiency challenge to the sexual assault offenses. *See id.*; *see also Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) (noting that, in a prosecution for, *inter alia*, incest and corruption of minors, this Court has long held that a victim's uncorroborated testimony is sufficient to convict).

There was also ample evidence presented for the jury to convict Keller of fleeing or attempting to elude a police officer, where the arresting officer testified that Keller continued to drive for "at least a mile" after the officer activated his lights and siren, failed to slow down, and did not stop until the officer blocked Keller's vehicle at a traffic light. *See* N.T., 7/12/16, at 222-23.

The evidence is also sufficient to sustain Keller's conviction of criminal mischief where the victim's grandfather, who owned the home that Keller

had destroyed, reported that Keller caused nearly $10,000 in property damage, which is double the threshold amount for a conviction of felony criminal mischief.

Finally, the evidence is sufficient to sustain Keller's conviction of prohibited offensive weapons.[6] A machete, which is a large blade typically reserved for clearing dense tropical vegetation, "serves no *common* lawful purpose," and its capacity to inflict serious bodily injury is beyond dispute. 18 Pa.C.S.A. § 908(c) (emphasis added); *see also Commonwealth v. Walton*, 380 A.2d 1278, 1279-80 (Pa. Super. 1977) (*en banc*) (rejecting defendant's sufficiency challenge concerning his conviction of prohibited offensive weapons where he possessed a "sword cane," which served no common lawful purpose and was therefore a prohibited offensive weapon under section 908(c)).

In his fourth issue, Keller argues that the sentencing court abused its discretion by

> impos[ing] consecutive sentences[,] all at the very top of the standard [guideline] range[,] resulting in a manifestly excessive aggregate sentence[,] while failing to consider:
>
> (a) the rehabilitative needs of [Keller] as required by [section] 9721(b) of the Sentencing Code;

---

[6] The Crimes Code definition of an "offensive weapon" does not specifically include a machete. **See** 18 Pa.C.S.A. § 908(c). However, the statute provides the following "catchall" definition of a prohibited offensive weapon: any "other implement for the infliction of serious bodily injury which serves no common lawful purpose." **Id.**

- 10 -

   (b) mitigating circumstances such as: [Keller's] age, his lack
        of any prior criminal record, [] his personal characteristics
        and his life situation, as well as his remorse and potential
        for rehabilitation.

   (c) the sentencing court in the instant action failed to state
        any reasons on the record related to the mitigating factors
        presented to the court.

Brief for Appellant at 18-19.

Keller challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. ***See Commonwealth v. Hill***, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review by raising it at sentencing or in a timely post-sentence motion, the appellant must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. ***Hill***, 66 A.3d at 363-64.

Here, Keller included a Rule 2119(f) Statement in his brief. ***See*** Brief for Appellant at 17-19. Moreover, his above-mentioned claims present a substantial question for our review. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that "an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question.") (citation omitted); ***see also Commonwealth v. Bonner***, 135 A.3d 592, 604 (Pa.

Super. 2016) (holding that a claim that appellant's standard range consecutive sentence was excessive, and the trial court failed to consider appellant's rehabilitative needs, raised a substantial question). Accordingly, we will address the merits of Keller's claims.

In its Opinion, the trial court addressed Keller's challenge to his sentence, summarized our standard of review and the applicable law, and opined that the court properly exercised its discretion in imposing a sentence commensurate with the seriousness of Keller's numerous crimes. *See* Trial Court Opinion, 6/14/17, at 15-16. We fully agree with the trial court's cogent reasoning and discern no abuse of its discretion in imposing a reasonable and just aggregate sentence befitting the seriousness of Keller's crimes. Accordingly, we affirm on this basis as to this issue. *See id.*

In his fifth issue, Keller avers that the trial court erred in failing to merge for sentencing purposes certain of his convictions. *See* Brief for Appellant at 64-66. According to Keller, the following convictions should have merged:

> (a) indecent assault, 18 Pa.C.S.A. § 3126(a)(1), with aggravated indecent assault, *id.* § 3125(a)(1);
>
> (b) indecent assault, *id.* § 3126(a)(8), with aggravated indecent assault, *id.* § 3125(a)(8);
>
> (c) corruption of minors, *id.* § 6301(a)(1)(ii), with aggravated indecent assault, *id.* § 3125(a)(1); and
>
> (d) sexual assault, *id.* § 3124.1, with aggravated indecent assault, *id.* § 3125(a)(1).

Brief for Appellant at 65. Keller argues that "[w]here the above crimes 'ar[o]se from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense[,]" the trial court erred in not merging them for sentencing purposes." *Id.* at 66 (quoting 42 Pa.C.S.A. § 9765 (governing merger of sentences)).

The trial court concisely discussed this claim in its Opinion, set forth the applicable law, and determined that it properly did not merge the sentences on the convictions at issue. *See* Trial Court Opinion, 6/14/17, at 16-17. As the trial court's reasoning is supported by the law, and we agree with its determination and discern no sentencing error, we affirm on this basis as to this issue. *See id.*

In his sixth and final issue, Keller argues that the trial court unlawfully determined that he met the requirements for classification as a SVP, pointing to this Court's recent decision in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017). *See* Brief for Appellant at 51-52. We agree.

Applying *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the *Butler* Court ruled that 42 Pa.C.S.A.

- 13 -

§ 9799.24(e)(3) of SORNA is unconstitutional.[7] **Butler**, 173 A.3d at 1217-18. Specifically, the Court stated as follows:

> [S]ince our Supreme Court has held that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then … a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.A. § 9799.12, that increases the length of registration[,] must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as a[] SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny.

**Butler**, 173 A.3d at 1217-18. Accordingly, the **Butler** Court ruled that "trial courts cannot designate convicted defendants SVPs (nor may they hold SVP hearings) until our General Assembly enacts a constitutional designation mechanism." **Id.** at 1218.

In the instant case, Keller was determined to be a SVP under the now-unconstitutional SVP mechanism. Thus, pursuant to **Butler**, we must vacate the trial court's sentencing Order finding that Keller is a SVP, as such a determination is no longer legal. **See id.** Therefore, we vacate that portion of the sentencing Order, and remand Keller's case for the sole purpose of

---

[7] Subsection 9799.24(e)(3) provides that at the conclusion of a SVP hearing, "*the court* shall determine whether the Commonwealth has proved *by clear and convincing evidence* that the individual is a [SVP]." 42 Pa.C.S.A. § 9799.24(e)(3) (emphasis added).

having the trial court issue Keller appropriate notice of his registration obligations under 42 Pa.C.S.A. § 9799.23. ***See Butler***, 173 A.3d at 1218.

Portion of sentencing Order deeming Keller a SVP vacated. Judgment of sentence affirmed in all other respects. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/21/2018

COMMONWEALTH OF
PENNSYLVANIA

v.

TODD M. KELLER

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
: CP-21-CR-0002444-2015
: CHARGE: (1) SEXUAL ASSAULT
: (3) AGGRAVATED INDECENT ASSAULT
: (4) AGGRAVATED INDECENT ASSAULT
: (5) UNLAWFUL CONTACT WITH MINOR
: (6) CORRUPTION OF MINORS
: (7) INDECENT ASSAULT
: (8) INDECENT ASSAULT
: AFFIANT: TPR. KRISTA MILLER
: OTN: T693010-3
:
: CP-21-CR-0002648-2015
: CHARGE: (1) BURGLARY-ADAPTED FOR
: OVERNIGHT ACCOMMODATION-NO
:  PERSON PRESENT (2) CRIMINAL MISCHIEF
: (3) FLEEING OR ATTEMPTING TO ELUDE
: POLICE OFFICER (4) CRIMINAL TRESPASS
: (5) INTIMIDATION OF WITNESSES OR
: VICTIMS (6) PROHIBITED OFFENSIVE
: WEAPONS (7) TERRORISTIC THREATS
: (8) DUI-GENERAL IMPAIRMENT
: (9) DUI-HIGH RATE
: AFFIANT: PTL. WILLIAM CERVOLA
: OTN: L963664-2
:
: CP-21-CR-0002440-2015
: CHARGE: (1) HARASSMENT
: (2) HARASSMENT
: AFFIANT: TPR. KRISTA MILLER
: OTN: T700409-3
:

## IN RE: OPINION PURSUANT TO PA. R.A.P. 1925

BREWBAKER, J., July 14, 2017

Appellant Todd M. Keller raises several issues in his appeal. For the reasons that follow, the Court respectfully suggests that it committed no error and did not abuse its discretion and therefore its decisions should be affirmed.

## Statement of Facts

On June 29, 2015, Trooper Krista Miller received a phone call from Cumberland County Children and Youth Services, advising that a referral had been made from the victim's therapist/counselor. The victim, L.K., had disclosed that her step-father, the appellant, had been sexually assaulting her since she was in sixth grade until she was removed from the home in May 2015. L.K. was thirteen years old when the assaults began and fourteen when she was removed. The victim was subsequently interviewed at the Children's Resource Center, where she disclosed that Appellant had been physically and sexually abusing her. L.K. related that Appellant had touched her vagina multiple times per week, and had forced her to touch his penis and perform oral sex on his penis. In addition, Appellant had forced the victim to have vaginal sexual intercourse with him more than five but less than ten times, and also had penetrated her buttocks with his penis between five and ten times. L.K. related that the most recent incident had occurred several days prior to her removal from the home in May 2015.

A search warrant was executed on Appellant's residence. Appellant was asked if any semen would be located in the basement of the residence. Appellant stated that there would be in the back bay. A few items were seized from the residence, though no testing of the objects was performed.

On August 19, 2015 at approximately 7:21 a.m., Trooper Miller of the Pennsylvania State Police requested Appellant come in to the station so that she could inform him of the allegations against him, and he could be interviewed. Appellant told Trooper Miller that he was leaving town, but he would let her know. However, he arrived at the station that same morning around 9:00 a.m., without a scheduled appointment, and talked to Trooper Miller and Trooper Michael

2

Bence in their interview room. Appellant was told at that time that he was free to leave and that he was not under arrest.

At some point during his statement, Trooper Miller requested that Appellant take a polygraph examination. He initially refused, stating that he would fail it. After she told him it would be one of the easiest ways to wrap up the investigation and that it would be the fastest way to get his kids back, he eventually consented. Because neither Trooper Miller nor Trooper Bence were qualified as polygraph examiners, they had to await the arrival of Trooper Jeremy Matas. While they were waiting, Trooper Miller escorted Appellant to the front of the building, and told him he could wait in the lobby, the parking lot, or wherever else he felt comfortable. Appellant asked if he could go outside for a cigarette and then asked Trooper Miller to wait with him while he smoked. While outside, Appellant asked Trooper Miller if he could "just plead guilty," but Trooper Miller advised him that is not how these things work. Trooper Matas then arrived at the station. While Trooper Matas went to set up for the polygraph, Trooper Miller went inside the station and left Appellant outside by himself.

Beginning around 11:05 a.m. on August 19, 2015, Trooper Matas conducted a polygraph examination of Appellant. Prior to beginning the examination, Trooper Matas had Appellant sign a polygraph waiver form that included a section regarding Appellant's *Miranda* rights, but also told him that he was free to leave. Appellant signed the form, which also discussed the three parts to the test: the pre-test, the in-phase testing, and the post-polygraph interview. Trooper Matas then conducted the pre-test, where he talked to Appellant at length. After the pre-test, Trooper Matas gave Appellant a break, after which he conducted the polygraph examination, followed by another break. Appellant was never handcuffed and never said he wanted to leave.

3

Around 11:17 a.m. while being interviewed on August 19, 2015, Appellant yawned and said he was very tired. He told Trooper Matas he had only slept for forty-five minutes the night before, and that he had consumed seven beers that previous night. He also told Trooper Matas that he was on Ativan and another medication for depression and anxiety. The polygraph examination ended around 1:23 p.m., and the post-polygraph interview began around 1:39 p.m.

Appellant's polygraph examination revealed deception regarding his denial of sexual contact with the minor victim. After the polygraph, Trooper Matas talked with Appellant about the deception, and discussed why the machine might show signs of deception. At this point, Appellant's story began to change. At one point, he asked Trooper Miller, who had rejoined Trooper Matas for the post-polygraph interview, if he could go home and call her later. Trooper Miller told him that now was the time and, if he cooperated, she would not arrest him. Appellant made further incriminating statements, and then left the station.

On August 21, 2015, Appellant left a threatening voicemail at the victim's grandparents' house, where the victim was residing, telling her that he was coming and she had better run. L.K. then fled to the home of a neighbor who called 911. Appellant then went to the grandparents' home in East Berlin, Pennsylvania and using a machete, broke into the home and caused extensive damage. Appellant went to the victim's bedroom first, and then to the grandparents' bedroom. Appellant fled the scene, but was spotted by Patrolman William Cervola who was responding to the call by the victim's neighbor. Patrolman Cervola activated his emergency lights, but Appellant did not immediately pull over. Eventually, Appellant was forced to stop when another car stopped at a red light and Patrolman Cervola positioned his vehicle to prevent Appellant from driving away. Patrolman Cervola approached Appellant, and immediately noticed the very strong smell of alcohol emanating from Appellant's vehicle, along with

4

Appellant's bloody hands. Appellant admitted to breaking into his in-laws' home, and Patrolman Cervola placed Appellant under arrest for driving under the influence of alcohol. On August 24, 2015, a warrant was issued for Appellant's arrest on charges relating to Docket #2444-2015.

On July 11, 2016, the morning that his jury trial was scheduled to begin, Appellant filed an Omnibus Pretrial Motion seeking to suppress the inculpatory statements and polygraph examination results, as well as a motion to sever the three dockets joined for trial. After a hearing, the Court denied both of Appellant's motions. Following a week-long trial, on July 15, 2016 the jury returned a verdict of guilty on all counts.[1] The Court ordered Appellant to undergo an assessment by the Pennsylvania Sexual Offender Assessment Board, and to appear for sentencing on November 1, 2016. After the Sexual Offender Assessment Board conducted its evaluation, Appellant requested a continuance and to have his own expert appointed, with the Court granting both requests. Ultimately, the Sexually Violent Predator determination hearing occurred on April 27, 2017.

At the hearing, the Commonwealth called Dr. Robert M. Stein, a member of the Pennsylvania Sexual Offenders Assessment Board to testify as an expert on sexual offender assessments. Dr. Stein had previously reviewed the police report, criminal complaint, and other records, and had conducted an interview with Appellant. During his testimony, Dr. Stein reviewed the fifteen statutory factors in determining whether Appellant is a sexually violent predator and testified to a reasonable degree of professional certainty that Appellant is a sexually violent predator. Dr. Stein concluded that Appellant suffers from "other specified paraphilic

---

[1] Due to an error in the criminal information, the charge of Statutory Sexual Assault at Count 2 of Docket #2444-2015 was incorrectly filed, and was withdrawn by the Commonwealth, without objection by the defense, prior to the jury reaching a verdict on that charge.

disorder of non-consent." He further testified that only twenty percent of his assessments resulted in a determination that a person met the criteria for a sexually violent predator.

Appellant called Dr. Thomas F. Haworth as an expert. Dr. Haworth has a private practice, but used to be a member of the Sexual Offenders Assessment Board. Dr. Haworth reviewed the same information as Dr. Stein but concluded that Appellant is not a sexually violent predator. Dr. Haworth concluded that Appellant suffers from bipolar disorder, and questioned Dr. Stein's diagnosis of other specific paraphilic disorder non-consent. At the conclusion of the hearing, the Court determined that the Commonwealth had satisfied its burden of proving by clear and convincing evidence that Appellant is a sexually violent predator.

Subsequently, Appellant was sentenced by the Court as follows. At Docket #CR-2444-2015, on all counts, Appellant was sentenced to pay the costs of prosecution, a fine, and to make restitution as appropriate. In regards to periods of incarceration, at Count 1, Sexual Assault, Appellant was sentenced to imprisonment for not less than four but no more than ten years, with credit for time already served since August 8, 2015.[2] At Count 3, Aggravated Indecent Assault, Appellant was sentenced to undergo incarceration for not less than three nor more than six years, consecutive to Count 1. At Count 4, Aggravated Indecent Assault, the sentence was to undergo imprisonment for not less than three nor more than six years, consecutive to Count 3. At Count 5, Unlawful Contact With a Minor, the sentence of the Court was that Appellant undergo imprisonment for not less than three nor more than six years, consecutive to Count 4. At Count 6, Corruption of Minors, the Appellant was sentenced to incarceration for not less than one nor more than two years, consecutive to Count 5. At Count 7, Indecent Assault, Appellant was sentenced to imprisonment for not less than three nor more than six months, concurrent with

---

[2] Although the credit date of August 8, 2015 was reflected in the presentence report and not disputed by either counsel, it is likely incorrect as Appellant was not in custody until he was arrested for on August 21, 2016.

6

Count 6. And at Count 8, Indecent Assault, Appellant was sentenced to undergo imprisonment for not less than three nor more than six months, concurrent with Counts 6 and 7.

At Docket #CR-2648-2015, Appellant was again sentenced at all counts to pay the costs of prosecution, a fine, and appropriate restitution; furthermore, Appellant was sentenced at Count 1, Burglary, to serve a period of incarceration of not less than one nor more than two years, consecutive to the sentences at Docket #CR-2444-2015. At Count 2, Criminal Mischief, Appellant was sentenced to undergo imprisonment for not less than three nor more than six months, consecutive to Count 1. At Count 3, Fleeing or Attempting to Elude a Police Officer, Appellant was ordered to undergo imprisonment for not less than one nor more than two years, consecutive to Count 3. Count 4, Criminal Trespass, merged with Count 1, Burglary. At Count 5, Intimidation of a Witness or Victim, Appellant was sentenced to imprisonment for not less than one nor more than two years, consecutive to Count 3. At Count 6, Prohibitive Offensive Weapons, Appellant was ordered to undergo imprisonment for not less than three nor more than six months, consecutive to Count 5. At Count 7, Terroristic Threats, Appellant was sentenced to not less than one nor more than twelve months, consecutive to Count 6. And at Count 8, Driving Under the Influence-General Impairment, Appellant was ordered to undergo a period of supervised probation for six months, concurrent to Count 7.[3]

At Docket #CR-2440-2015, Count 1, Harassment, Appellant was ordered to pay the costs of prosecution, a fine of $50, and undergo a period of supervised probation for one year, concurrent with the sentences imposed at Docket #CR-2648-2015. At Count 2, Harassment, Appellant was ordered to pay the costs of prosecution, a fine of $50, and undergo a period of supervised probation for one year, concurrent with Count 1.

---

[3] To avoid any post-conviction issues on the alcohol test, the Commonwealth agreed at the time of sentencing that the Court should sentence at Count 8, and Merge Count 9, Driving Under the Influence-High Rate of Alcohol, with the lower charge.

7

Appellant's overall minimum sentence was sixteen years, ten months, which was within the standard range of the sentencing guidelines. The Court explained at the time of sentencing that it was imposing such a significant sentence because the appellant showed no remorse for his actions, including molesting his step-daughter over a period of several months, threatening her when she finally told someone what had happened, and finally carrying out that threat by breaking into her grandparents' home and destroying the victim's bedroom first.

## Analysis

On appeal, Appellant raises six issues. In his first and second issue, Appellant argues that the Court erred in denying his Motion to Suppress and Motion to Sever. Next, Appellant contends that the evidence was insufficient to sustain a guilty verdict. Fourth, Appellant argues that the Court erred and abused its discretion in classifying him as a sexually violent predator. Fifth, Appellant contends that the Court abused its discretion in imposing consecutive sentences at the top of the standard range resulting in an "excessive and unreasonable aggregate sentence" and failed to take into consideration mitigating circumstances. Finally, Appellant argues that the court erred in failing to merge certain convictions for sentencing purposes.

### Motion to Suppress and Motion to Sever

Appellant's first complaint on appeal is that the Court erred in denying his motion to suppress his statements made in his post-polygraph interview, as well as all evidence resulting therefrom. His second complaint is that the Court erred in denying his motion to sever.

Initially, it is important to note that both Appellant's motion to suppress and his motion to sever were untimely. Appellant was arraigned on the burglary charges on November 3, 2015, and on the sexual offenses on November 24, 2015, giving him thirty days from those dates to file

8

any pretrial motions. Furthermore, trial counsel in the person of Stacy Wolf was appointed on April 12, 2016, after the Public Defender Office found they had a conflict in representing Appellant. Appellant's motions were not filed until the morning of his scheduled jury trial, on July 11, 2016, almost three months after trial counsel was appointed.

Trial counsel attempted to argue that she did not receive sufficient discovery until June 21, 2016, but admitted that she had discovery relating to the subject matter that she was seeking to suppress, as well as access to conversations with her client, such that she would have been aware of any issues regarding his incriminating statements. Furthermore, counsel conceded that all discovery relevant to her motions was provided by June 21, 2016, and yet she did not file her motion until the morning of trial, twenty days after she had received every item of discovery. It is also important to note that the motion to sever, which was also filed on July 11, 2016, did not require any discovery whatsoever; the Commonwealth's Notice of Trial Joinder was filed on November 17, 2015. Assuming *arguendo* that there was good cause for trial counsel's significant delay, both motions were properly denied.

In addressing the motion to suppress, this Court properly denied that motion, as it was based on the inculpatory statements that Appellant made after he failed his polygraph examination, which was done after he signed a *Miranda* waiver encompassing the post-polygraph conversation. Examining the totality of the circumstances, Appellant's waiver of his rights was done knowingly, intelligently, and completely voluntarily.

In reviewing the case law, the Court began with *Commonwealth v. Hill*, 104 A.3d 1220 (Pa. 2014), as it was the case presented in Appellant's motion to suppress. In *Hill*, the Commonwealth appealed to determine "[i]s a second set of Miranda warnings and a second waiver required before questioning a criminal defendant immediately after he failed a polygraph

9

examination and waived his right to remain silent after being read Miranda warnings right before the polygraph examination?" *Id.* at 1236. However, this case actually dealt with an ineffective assistance of counsel claim, and the Supreme Court remanded this case to the Superior Court for further findings. On remand, an unpublished opinion in *Commonwealth v. Hill*, 125 A.3d 445 (Pa. Super. 2015), found that Hill had "knowingly, intelligently and voluntarily made his April 25, 1998 post-polygraph statement." The *Hill* court cited *Wyrick v. Fields*, 459 U.S. 42 (1982) (*per curiam*) for the "totality of the circumstances" test in determining if a defendant had waived his right to counsel at a post-polygraph interview.

In the instant case, this Court undertook the totality of the circumstances evaluation at the conclusion of the suppression hearing. The Court now relies primarily on those findings, as follows:

> The Court specifically finds that the Defendant came to the interview on his own. He was told multiple times that he was free to leave.
>
> He was left in the parking lot or the lobby several times unattended. He signed his *Miranda* statement after it being read to him and thoroughly explained to him on the video.
>
> So the Court specifically finds that there is a valid initial waiver of his rights. The case law then says to determine whether there's a valid post-polygraph waiver of the right to look at the contents of the waiver and to look at whether there was a request for counsel.
>
> The waiver included the pre-interview, the polygraph, and the post-polygraph interview, and that was explained to Mr. Keller, and that Mr. Keller never requested counsel throughout this entire proceeding. He was never handcuffed. He was never in a locked room. He was allowed to leave, and he did, in fact, leave.

Notes of Testimony, In Re: Omnibus Pretrial Motion, 7/11/16, pg. 71.

Appellant argued at the hearing that the fact that he was tired, was taking two medications, and had several beers the night before invalidated his lawful waiver of counsel.

10

However, based on the totality of the circumstances, it is clear that Appellant validly waived his right to counsel and never wavered in that decision. He never requested counsel, and never indicated that he was done talking to the police. It was only when he was confronted with his deception that he confessed to the crimes he had committed. Prior to that time, however, he had asked to plead guilty, and had been given multiple opportunities to leave the station. Furthermore, according to the specific waiver that he signed, Appellant knew that the polygraph examination was being given in regard to "allegations that you put your penis in [L.K.'s] vagina while at your house from 2013-2015." Even after being provided that information, with specific, serious allegations, Appellant signed the waiver, and proceeded to undergo the polygraph, take a break, and then talk to the police in the post-polygraph interview. He then confessed in the post-polygraph interview, but was still allowed to leave, as promised. His constitutional rights were not infringed in any way.

In regard to Appellant's argument that the Court erred in denying his motion to sever, the issue was again raised significantly past any time limitations provided by law. Assuming *arguendo* that the motion to sever was timely raised, it was also properly denied.

Appellant was charged with three separate dockets. Docket #2444-2015 involved various sexual charges with his minor stepdaughter as the victim. Docket #2648-2015 involved charges of burglary, DUI, and related offenses, also involving the same victim, as well as her grandparents. Docket #2440-2015 involved two counts of harassment, again involving the same victim. Importantly, the interview with the State Police occurred on August 19, 2016, after which Appellant, despite being instructed to have no contact with the victim or her grandparents, repeatedly called, and then two days later, on August 21st, committed the actions relating to Docket #2648-2015. The harassment charges at Docket #2440-2015 relate to the phone calls

11

made in the intervening two days between the interview and the burglary. While these acts may have been separated by a few days, they were all part of a single chain of events and involved, for the most part, the same victim. The victim's grandparents were only tangentially involved, as the real target of Appellant's aggression and violence was L.K. For these reasons, the motion to sever was properly denied.

## Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to sustain the guilty verdicts. The following standard applies when reviewing a sufficiency of the evidence claim:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa. Super. 2015).

In the present case, over the course of the five day trial a significant amount of testimony was given and substantial evidence was introduced. The evidence established, beyond a reasonable doubt, that over the course of several months, Appellant had sexually assaulted L.K. on numerous occasions. After he discovered that she had reported his assaults, the Appellant called and threatened her that he was coming, then drove to her grandparents' home while intoxicated, broke down the door and destroyed the inside of the victim's bedroom as well as the

12

grandparents' bedroom. The victim's testimony was clearly found to be credible by the jury and alone is sufficient to establish Appellant's guilt regarding the sexual crimes. Additionally, the jury saw the video of Appellant's confession to the crimes. Patrolman Cervola testified concerning the burglary, DUI, and other related offenses, and the jury heard recordings of Appellant's calls to the victim and family threatening to cause her harm. The jury found this testimony and evidence to be credible. While Appellant testified and denied the allegations, the jury chose to not find his testimony credible. Moreover, the issue of credibility goes to the weight, not sufficiency of the evidence. *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003). The Court may not substitute its judgment for that of the jury as fact-finder; there was sufficient evidence in the present case to sustain the guilty verdicts on all charges.

## Sexually Violent Predator Determination

Appellant argues that the Court erred and abused its discretion in classifying Appellant as a sexually violent predator ("SVP"). The Superior Court has a well-established standard in reviewing a SVP designation:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa. Super. 2011) (quoting *Commonwealth v. Fuentes*, 991 A.2d 935, 942 (Pa. Super. 2010). When evaluating the testimony of witnesses, the fact finder is free to accept or reject the credibility of expert and lay witnesses alike, and may believe all, part or none of the evidence. *Nemirovsky v. Nemirovsky*, 776 A.2d 988, 993 (Pa. Super. Ct. 2000). "The credibility of witnesses, professional or lay, and the weight to be given

13

their testimony is strictly within the proper province of the trier of fact." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1161 (Pa. 2010) (quoting *In re Estate of Hunter*, 205 A.2d 97, 102 (Pa. 1964)).

In the instant case, both the Commonwealth and Appellant presented expert testimony on the issue of whether Appellant is a sexually violent predator. The Court chose to find the Commonwealth's expert, Dr. Stein, to be more credible than Appellant's expert, Dr. Haworth. The fact that Appellant presented an expert who disagreed with Dr. Stein does not mean that the Commonwealth failed to present sufficient evidence to satisfy the clear and convincing evidence standard. Dr. Stein testified that in his professional opinion, to a reasonable degree of professional certainty, Appellant should be found to be a sexually violent predator in accordance with the required statutory factors. In his testimony, he noted that he only finds that a person meets this criteria in approximately twenty percent of the cases he reviews. The Court chose to credit his testimony over that of Dr. Haworth, and did not abuse its discretion.

## Sentencing

Appellant argues that the Court abused its discretion in imposing consecutive sentences as well as sentences at the "very top" of the standard range, which resulted in an excessive and unreasonable aggregate sentence. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Dotter*, 589 A.2d 726 (Pa. Super. 1991). "[A]n abuse of discretion is not shown merely by an error in judgment [, but rather,] the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa. Super. 2017). A

14

sentence within the standard range of the guidelines is presumptively reasonable. *See Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009). Furthermore, a sentencing court "has the discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question." *Id.* (citation omitted). *See also* 42 Pa. C.S. § 9721(a). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Moury*, 992 A.2d 162, 171-72 (Pa. Super. 2010) (citation omitted). Finally, our Supreme Court has held that where the trial court possesses a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988).

The sentence imposed by the Court, while significant, was not excessive, unreasonable, or unduly harsh given the facts of the case. Appellant sexually assaulted his step-daughter on multiple occasions over the course of several months. The victim was a young teenage girl, who was preyed upon within her home and by a person who was entrusted with her care. Once she came forward and an investigation was begun, Appellant threatened physical violence against the victim and subsequently carried out those threats. He drove to the victim's grandparents' house while heavily intoxicated, used a machete to break down the door, and immediately went to the victim's room and caused significant damage. These actions caused a great deal of emotional harm to the victim, as she stated very eloquently, though tearfully, at the time of sentencing. The Court's decision to run some of the sentences consecutively instead of concurrently was in large part due to the serious nature of the crimes, the extended period of time and continued escalation

15

of violence, and the lack of remorse shown by Appellant. Appellant not only used his position of authority to repeatedly take advantage of his step-daughter, but then turned to physical violence when his actions became known, and even went so far as to blame the victim for the crimes he had committed. The significance of Appellant's sentence was due to the seriousness of his actions and not due to partiality, prejudice, bias or ill will. The Court relied on the pre-sentence investigation report in making its decision, but is unsure what "substantial mitigating circumstances" exist in this case as none were addressed by defense counsel or Appellant at time of sentencing, except for two letters presented from family members in support of Appellant. Additionally, all of the sentences were within the standard range and therefore are presumptively reasonable. The Court did not abuse its discretion in sentencing Appellant.

## Merger

Finally, we consider Appellant's contention that certain convictions should have merged for sentencing purposes, specifically: indecent assault (18 Pa. C.S. § 3216(a)(1)) with aggravated indecent assault (18 Pa. C.S. § 3125(a)(1)), indecent assault (18 Pa. C.S. § 3126(a)(8)) with aggravated indecent assault (18 Pa. C.S. §3125(a)(8)), corruption of minors with aggravated indecent assault, and sexual assault with aggravated indecent assault.

Under 42 Pa. C.S. § 9765, crimes do not merge for sentencing purposes unless (1) the crimes arise from a single criminal act and (2) all of the statutory elements of one offense are included in the statutory elements of the other offense. 42 Pa. C.S. § 9765. "If the offenses stem from two different criminal acts, merger analysis is not required." *Commonwealth v. Williams*, 958 A.2d 522, 527 (Pa. Super. 2008) (citation omitted). In this regard,

> [t]he threshold question is whether [the defendant] committed one solitary criminal act. The answer to this question does not turn on whether there was a "break in the chain" of criminal activity. Rather, the answer turns on whether "the actor commits multiple criminal acts beyond that which is necessary to

16

establish the bare elements of the additional crime[.]" If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from receiving a "volume discount on crime."

*Commonwealth v. Robinson*, 931 A.2d 15, 24-25 (Pa. Super. 2007) (citations omitted).

In the present case, the victim testified that Appellant committed multiple different sexual acts over a period of several months. Though the victim could not provide exact numbers, it was clear that there were more acts than crimes charged, and the victim testified to specifics of separate acts on separate occasions. Consequently, even assuming *arguendo* that all of the statutory elements of one offense are included in the statutory elements of the other offense, there was no *single* criminal act in the present case but rather *many* acts. Appellant's multiple acts at different times fail the first prong of the test under the merger doctrine. Therefore, the Court did not err in refusing to give Appellant a "volume discount" for his multiple acts and not merging any of the above mentioned crimes for sentencing purposes.

It is respectfully submitted that the Court committed no abuse of discretion or errors of law and therefore should be affirmed.

July 14, 2017

Jessica E. Brewbaker, J.

Erin Bloxham, Esquire
Assistant District Attorney

Stacy Wolf, Esquire
Court-appointed for Defendant

:rlm

17